## In re WAIT'S WILL.

(*Surrogate's Court, New York County.* May 5, 1888.)

WILLS—PROBATE—AGE OF WRITING OFFERED—EXPERT TESTIMONY.

A paper offered for probate as a will was in decedent's handwriting, but the body of the instrument was written in different inks and at different times. Contestants introduced an expert examiner of handwritings, who stated that he was qualified to determine the constituents and approximate ages of inks when appearing upon paper; and that, in his opinion, portions of the instrument were written after the date of its execution. The witness was then required to state the relative ages of inks used in other writings, the dates of which were afterwards proved; and he was correct in but two instances, and incorrect or unable to state in five instances. *Held,* that there was nothing to show that the instrument was not in the same condition as when executed, and that it should be admitted to probate.

On application for admission of William S. Wait's will to probate.

RANSOM, Surrogate. The paper offered as the will was executed June 24, 1882. By it the decedent bequeaths to his wife, Jeannie F. Wait, his real and personal estate for life, and appoints her sole executrix, without bonds, with remainder over to three of his children and the sister of his wife, in equal shares, and five dollars only to one daughter, "for reasons known to my family." Objections were filed to the probate by three of the children of the decedent. The testimony shows that on the evening of June 24, 1882, the decedent and his wife called at the residence of the Misses Schoonmaker, on West Twenty-Fourth street, and produced two wills from his pocket, one the instrument in dispute, and the other his wife's, each in favor of the other, and containing the same dispositive provisions in respect to the remainder, and both of which were properly executed at the same time, the subscribing witnesses being the Misses Schoonmaker, and they testified that he was at the time in sound mind and good health. In October or November, 1885, over three years after the execution of the instrument, the decedent, in the presence of Miss Margaret E. Power and his wife, declared the same paper to be his last will and testament, and requested Miss Power to sign it, which she did at the time. In September or October of the same year, the decedent reproduced the will to Miss Elizabeth Schoonmaker, one of the subscribing witnesses, when she was visiting at his house, to let her copy the introductory part, with a view of enabling her to draw her own will. The provision, in the first instance, for his wife, is in harmony with his subsequent declarations; and he afterwards caused a conveyance of a valuable piece of real estate, which he held in fee, to be made to her. The instrument itself, except the signature, is shown to be wholly in the decedent's handwriting.

The effort of the contestants has been to show that the body of the will was written at different times, in two different kinds of ink; that some parts were written after the date of its execution as recited on the instrument, and in consequence is invalid. To sustain this theory, they produced as a witness Mr. Carvalho, who testified that he had been for many years employed as an expert to examine questioned handwritings, and in the course of his employment he had made a special study of the composition of inks, and was qualified to state their constituents, and their approximate ages when appearing on paper. He testified that six different inks were to be seen in the instrument in question. Leaving out of consideration the red ink used in underscoring portions of certain lines, and the signature of Miss Power, the subsequent subscribing witness, in blue ink, he found two different inks used in the body of the instrument, (which fact is apparent on inspection,) a third ink in the signature

of decedent and the subscribing witnesses, and a fourth in the words and figures reciting the date. After applying a chemical test in court, he expressed the opinion that the paper was written in one ink with blanks left therein; that the blanks had been filled in in another; and that the signatures of the decedent and of the subscribing witnesses, the Misses Schoonmaker, lacked the age that the paper would appear to give them, and that the ink in the date at the bottom is not as old as represented. To determine the accuracy of the witness' judgment, proponent's counsel, on cross-examination, submitted various papers to him to test by the means he had applied to the writing in the will, to get his opinion as to the relative ages of the inks used therein. The actual dates of the writing were subsequently proven, and with the following results: In respect to Exhibits 5 and 6, he stated that, in his opinion, No. 6 was written before No. 5, but he could not state the period of time. In this statement his opinion was correct; for No. 6 was written August 30, 1881, and No. 5, February 4, 1886. In respect to Exhibits 7 and 6, he did not think there was much difference in their ages, but he was of the opinion that No. 6 was written prior to No. 7. In this his opinion was correct, for No. 6 was written August 30, 1881, and No. 7, September 27, 1882. · He was of the opinion that Exhibit 5 was written before Exhibit 7; but in this he was incorrect, as No. 5 was written February 4, 1886, nearly four years after. As between Exhibits 5 and 8, he was unable to say which was written first, but the fact is that No. 5 was written February 4, 1886, and No. 8, August 4, 1884, a difference of about a year and a half. As between Exhibits 9 and 10, he was of the opinion that both were written in the same kind of ink, at the same time, or within a few hours, or within a short period of each other. The testimony shows that No. 9 was written November 24, 1887, and No. 10, December 7, 1886, which could hardly be regarded as "within a short period" in the sense in which he used the term. Exhibits 11 and 12 he stated were written in the same kind of ink, but one had a little water put in when used, and both were written about the same time, or within a week of each other. He could not say which was the first, but thought that No. 11 was. The testimony shows that No. 11 was written December 29, 1884, and No. 12, December 28, 1887,—certainly a wide departure from his statement that they were probably written within a week of each other. In respect to Exhibits Nos. 13 and 16, he is of the opinion that the ink in the former is older than the latter, and that there might be a difference of from one to twenty years in the ages of the two. The testimony shows that No. 16 was written February 7, 1888, and No. 13, February 21, 1864. His view was correct. As between Exhibits 16 and 14, he thinks No. 16 is an exceedingly young ink, and No. 14 older. In this statement he was correct, for the former was written February 7, 1888, and the latter, August 10, 1865. It will be seen that the results of the test show that the opinion of the witness is not to be relied upon, and sometimes not even for approximate accuracy. Indeed, he states that his opinions refer more to the age of the ink used than to the periods at which the writing was made on the paper. He also states that other considerations may tend to vary the correctness of his testimony; for instance, whether the ink was taken from the surface or from the bottom of the fluid in the inkstand, whether it had been a long time or a short time exposed to the atmosphere, and whether it had been diluted by the addition of water or other fluid. But in this case there can be no allegation of an attempt to tamper with the instrument to defeat or vary the testamentary purposes of the decedent, for it is wholly in his handwriting, and consequently he must have known its contents. Mr. Carvalho was doubtless correct in his opinion that the body of the instrument was written in two kinds of ink, and, if so, at different times. It is apparent that, when the decedent did the first writing, he had, as the primary scheme of the will, to provide for his wife, but had not then determined whether to make her a life-tenant or to give her an estate in fee. When he had

concluded upon the former disposition, he inserted in the first blank the provision giving her the estate "as long as she lives," and filled the second blank with the provision disposing of the remainder on her death, and added the attestation clause in the same ink. There is nothing in the testimony to show that the instrument was not in the same condition on the day it was executed that it is now, except the surmise of Mr. Carvalho, based upon tests proven by the testimony to be not trustworthy.

The evidence produced by the contestants showing a dissatisfaction on the part of the decedent, on the day previous to his death, because she had closed his account at the bank, and transferred the balance to her own name, has no significance in the issues involved in this proceeding, as the facts occurred years after the execution of the will, the terms of which are in harmony with the decedent's declarations and acts, showing a purpose to provide for his wife. The will may be admitted to probate.